# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SEMIR SIRAZI, GREENSTONE ) <br> CAPITAL L.L.C. and MARDINI, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GENERAL MEDITERRANEAN ) <br> HOLDING, SA, ORIFARM, SA, and ) <br> NADHMI AUCHI, ) <br> ) <br> Defendants. ) | Judge Joan B. Gottschall <br><br> Case No. 12 C 0653 |

## MEMORANDUM OPINION & ORDER

Plaintiffs Semir Sirazi, Greenstone Capital L.L.C, and Mardini, Inc. (collectively "Plaintiffs") sued Defendants General Mediterranean Holding, SA ("GMH"), Orifarm, SA ("Orifarm"), and Nadhmi Auchi (collectively "Defendants") for tortious interference with contractual relations, aiding and abetting fraud, civil conspiracy, and unjust enrichment, all in violation of Illinois law. Now before the court is Defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), or based on the *res judicata* effect of rulings in a previous state-court action. In the alternative, Defendants move the court to dismiss or stay this case pursuant to the *Colorado River* doctrine. Defendants further move to strike certain allegations in the complaint pursuant to Rule 12(f)(2). For the reasons stated below, the court denies the motion to dismiss or to stay and strikes certain allegations in the complaint.

## I. BACKGROUND

Plaintiffs allege that Defendants are liable for debt owed them by non-party Antoin Rezco. They allege that, pursuant to the terms of a 2006 settlement agreement between Rezco and Plaintiffs (the "Settlement Agreement"), Rezco was to repay debts to Plaintiffs totaling $7.7 million dollars. Rezco further agreed to extinguish a loan guaranteed by Sirazi. (Compl. Ex. 3 (Settlement Agreement) at 3, ECF No. 1.) In the Settlement Agreement, Rezco represented that he was the sole owner of 80% of the membership interests in Heritage Development Partners, LLC ("Heritage"), an Illinois limited liability company which in turn was part-owner of a sixty-two acre parcel of land in Chicago. Rezco further warranted that his ownership interests in Heritage would not be sold, transferred, or encumbered without Plaintiffs' consent, except through a private placement offering of the interests. (*Id* at 8-9.) According to the complaint, distributions from that private placement offering were to be used repay Rezco's debt to Plaintiffs, and Plaintiffs were given a security interest in all monies generated from Rezco's ownership interests in Heritage.

In December 2006, Plaintiffs sued Rezco to recover amounts allegedly due them under the Settlement Agreement and previous agreements into which they had entered with Rezco. They then learned that Rezco had transferred his ownership interests in Heritage to Defendants. As a result of the transfer, Rezco was left with no assets from which Plaintiffs could recover the money owed them. Plaintiffs filed an involuntary bankruptcy petition against Rezco. Their suit against Rezco was stayed by the bankruptcy proceedings.

In this action, Plaintiffs allege that Defendants formulated and aided a scheme in which Rezco made false representations to Plaintiffs while keeping secret the transfer of his ownership interests in Heritage to Defendants. The shares in Heritage were allegedly transferred to

Orifarm, a subsidiary of GMH, in exchange for $20 million in loan forgiveness and $7.5 million that was wired to Rezco's lawyers. Count I of the complaint alleges tortious interference with contractual relations. Count II alleges that Defendants aided and abetted Rezco in committing fraud. Count III alleges civil conspiracy. Count IV alleges unjust enrichment. Count V seeks an accounting, and Count VI seeks injunctive relief.

Before filing their complaint in this court, Plaintiffs filed an action in the Circuit Court of Cook County on July 15, 2010, naming all of the defendants in this action as well as Heritage. The state-court complaint alleged that the defendants engaged in a scheme to secretly transfer Rezco's ownership interests in Heritage to GMH, Orifarm, and Auchi. (Defs.' Mot. to Dismiss Ex. 1 (Cook Cnty. Compl.), ECF No. 39-1.) Plaintiffs' state-court claims included tortious interference with contractual relations, aiding and abetting fraud, aiding and abetting Rezco's breach of fiduciary duties, fraudulent concealment, civil conspiracy, and unjust enrichment. (*Id.*) The state-court judge dismissed the claims against Auchi for lack of personal jurisdiction on August 1, 2011. (Order, ECF No. 39-5.) The court held that there were insufficient "evidentiary inferences in the record" to support Plaintiffs' contentions that Auchi controlled GMH. (Tr. at 26, ECF No. 39-5.) Plaintiffs were granted until September 2, 2011, to file an amended complaint. Plaintiffs did not amend their complaint. Instead, an agreed order was entered on October 4, 2011, dismissing all counts against GMH, Orifarm, and Heritage. The counts against GMH and Orifarm were dismissed without prejudice, while the counts against Heritage were dismissed with prejudice. (ECF No. 39-7.)

Plaintiffs filed this action on January 30, 2012. Defendants have moved to dismiss the complaint against Auchi and Orifarm for lack of personal jurisdiction pursuant to Rule 12(b)(2), although they have withdrawn their jurisdictional arguments with respect to GMH. Defendants

further argue that the state court's August 2011 rulings require the dismissal of Auchi pursuant to the principle of *res judicata*, because the state court's dismissal of Auchi was with prejudice. Alternatively, they argue that if the dismissal of Auchi was without prejudice, the state-court action is still pending, and this federal action should be dismissed or stayed under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Defendants further argue that the complaint fails to state a cause of action and should be dismissed pursuant to Rule 12(b)(6). Finally, they ask the court to strike statements in the complaint referring to Auchi and Rezco's criminal convictions, pursuant to Rule 12(f)(2).

On January 9, 2013, Plaintiffs filed a motion for default judgment as a sanction for Defendants' noncompliance with discovery obligations. (See ECF No. 110.) Defendants had refused to produce a witness to provide information as to Auchi's ownership and control over GMH, which Plaintiffs contended was essential to determine whether this court could exercise personal jurisdiction over Auchi. The court adopted the magistrate judge's Report and Recommendation in part on February 27, 2013, and ordered that as a sanction for failure to comply with discovery orders, personal jurisdiction would be taken as established as to Auchi. The court further ordered that Auchi would be deemed to exercise full ownership and control over GMH for all purposes in this litigation. (*See* Order, ECF No. 131.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(2)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) seeks dismissal of a claim where personal jurisdiction is lacking. The exercise of personal jurisdiction requires "sufficient contacts or ties with the state of the forum to make [bringing suit] reasonable and just, according to our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v.*

4

*Washington*, 326 U.S. 310, 320 (1945). Once a defendant has moved to dismiss under Rule 12(b)(2), a plaintiff must make a prima facie showing of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether the plaintiff has made such a showing, the district court takes the plaintiff's well-pleaded allegations as true, and also considers affidavits or other evidence submitted by the defendant in opposition to the exercise of jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). If the plaintiff succeeds in making out a prima facie showing, the court must then consider if the defendant has succeeded in putting material facts into dispute; and if it has, the court must hold an evidentiary hearing to resolve them. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

**B. Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a case if the plaintiff "fail[s] to state a claim upon which relief can be granted." The court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). Although a court generally does not consider matters outside the pleadings, the court may "take judicial notice of matters of public record," such as the orders of other courts. *Gen'l Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

Although Federal Rule of Civil Procedure 8(a) requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 566 U.S. 662 (2009) (noting that Rule 8 "demands more than an

5

unadorned, the-defendant-unlawfully-harmed-me accusation"). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Id*. In other words, to survive a motion to dismiss post-*Twombly*, "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is 'could these things have happened, not did they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)).

In addition, any fraud-based allegations must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). This means that the plaintiff must, at a minimum, provide the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those representations. *Id*. Malice, intent, knowledge, and other conditions of a person's mind, however, may be alleged generally. Fed. R. Civ. P. 9(b).

**C. Rule 12(f)(2)**

Rule 12(f) permits the court to strike "any redundant, immaterial, impertinent, or scandalous matter," either on motion of a party "before responding to the pleading," or on the court's own motion. Courts generally disfavor motions to strike, but they may serve to remove unessential clutter, clarify the issues in dispute, and streamline the litigation. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

### III. ANALYSIS

### A. Personal Jurisdiction

Because the court has ordered that personal jurisdiction shall be taken as established over Auchi as a sanction for his failure to comply with discovery orders, and because Defendants have withdrawn their challenge to jurisdiction with respect to GMH (*see* ECF No. 65 at 2), the court addresses the question of personal jurisdiction only with respect to Orifarm. Illinois' long-arm statute allows the exercise of jurisdiction over nonresident defendants if it would be allowed under either the Illinois Constitution or the United States Constitution; the Seventh Circuit has held that there is no material difference between the two standards. *Mobile Anesthesiologists, LLC v. Anesthesia Assocs. of Houston Metroplex, PA*, 623 F.3d 440, 443 (7th Cir. 2010); *see also* 735 Ill. Comp. Stat. 5/2–209(c). Thus, the court must decide whether the exercise of personal jurisdiction over Orifarm comports with federal due process.

Plaintiffs argue that "[j]urisdiction over Orifarm is proper because it consented to jurisdiction in the transactions at issue, directly holds controlling ownership in Illinois companies, and is amendable to process in Illinois through service on its domestic subsidiaries." (Pls.' Resp. to Mot. to Dismiss 6, ECF No. 120.) Defendants contend in turn that Orifarm has never consented to jurisdiction in Illinois, and that Orifarm does not directly own any real estate, maintain an office, or conduct any business in Illinois.

Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts with the forum. *See Tamburo*, 601 F.3d at 701. Specific jurisdiction exists where a controversy is related to a defendant's contacts with a forum. *Hyatt*, 302 F.3d at 713. Indeed, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18 (1985) (quoting

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). The Supreme Court has found specific jurisdiction over a defendant to exist where tortious activity outside the forum was directed at a resident of the forum, and the effect of that conduct was felt within the forum. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). In *Calder*, a Florida reporter wrote an allegedly defamatory story about a California resident, who filed suit in California. Even though the alleged conduct occurred entirely in Florida, the Court found that the intentional and allegedly tortious conduct was aimed at California because the defendant knew that the brunt of the injury would occur there. The Court concluded that the defendant could "reasonably anticipate being haled into court" in California. *Id*. at 790. The Seventh Circuit has subsequently stated that "a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant *expressly aims* its actions at the state with the knowledge that they would cause harm to the plaintiff there." *Mobile Anesthesiologists*, 623 F.3d at 445 (emphasis added) (holding that there was no jurisdiction where defendant registered a domain name similar to the plaintiff's registered trademark, but was unaware at the time that the trademark existed).

According to the complaint, Orifarm is a Luxembourg-based company that operates as a subsidiary of GMH. (Compl. ¶ 12.) Orifarm allegedly acquired Rezco's ownership interests in Heritage, and thus in the land parcel, in exchange for $20 million in loan forgiveness and $7.5 million that was wired to Rezco's lawyers. The complaint alleges that Orifarm "acquired and still maintains a majority share of two Illinois limited liability companies, MT Property Holdings, LLC . . . and Heritage," and that Orifarm "owns real property in Illinois through" Riverside District Development, LLC, which is in turn owned in equal shares by GMH and Heritage. (Compl. ¶ 16.)

In this case, Plaintiffs have alleged that the transfer of Rezco's ownership interests to Orifarm was made with the intent to prevent Plaintiffs from asserting their security interest in Heritage. The facts as alleged by Plaintiffs satisfy the "express aiming" requirement, because the transfer was allegedly made with the knowledge that it would prevent Rezco from satisfying its obligations to Plaintiffs under the Settlement Agreement. Defendants argue that "GMH decided to place the membership units in Orifarm," and that Orifarm was merely a passive recipient of the interest and did not take any action itself. (Defs.' Reply 9, ECF No. 124.) Taking the allegations in the complaint as true and drawing inferences Plaintiffs' favor, however, Orifarm was a primary participant in an alleged wrongdoing expressly aimed at an Illinois resident, with the knowledge that the effects of that conduct would be felt in Illinois, and jurisdiction over it is proper. The court therefore denies Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(2).

**B. *Res judicata* and the *Colorado River* Doctrine**

Defendants argue that the court should dismiss this case based on *res judicata* because the state court dismissed Auchi for lack of personal jurisdiction, and that ruling should have a preclusive effect in this action. Alternatively, they argue that, under *Colorado River*, the court should stay or dismiss this lawsuit because there is a parallel state-court action. Neither basis for a dismissal or stay is applicable to the facts here.

The claims against Auchi in the state-court action were dismissed because the evidence presented to the state court did not establish a basis for personal jurisdiction over Auchi. It is clear from the transcript of the state-court proceedings that the dismissal was without prejudice. The judge stated that the dismissal was "based upon the allegations pled in the complaint and the submissions presented," and the parties then discussed in open court Plaintiffs' plans to amend

the complaint based on further jurisdictional discovery. (Tr. Aug. 1, 2011 at 31-38, ECF No. 39-5.) Plaintiffs were granted leave to file an amended complaint. (Order, ECF No. 39-5.) Instead, Plaintiffs chose to voluntarily dismiss the remainder of the state-court suit and re-file their claims in federal court.

Under these circumstances, the state court's ruling that Plaintiffs had failed to establish that personal jurisdiction over Auchi was proper has no *res judicata* effect on these proceedings. In general, under Illinois law, dismissal of a claim without prejudice is not considered an adjudication of the claim on the merits. *See Wisniewski v. Asset Acceptance Capital Corp.*, No. 08 CV 2793, 2009 WL 212155, at *3 (N.D. Ill. Jan. 29, 2009) (citing Ill. Sup.Ct. R. 273 and explaining that when an order specifies that a dismissal is without prejudice, the plaintiff may re-file a suit on the same claim). *Cf. Brady v. Joos*, 647 N.E.2d 588, 590 (Ill. App. Ct. 1995) ("[D]ismissal with prejudice denotes an adjudication on the merits and is *res judicata*.").

Moreover, although collateral estoppel applies to rulings on personal jurisdiction, the state court's decision would estop Plaintiffs from arguing that this court has jurisdiction over Auchi only if that decision were necessary to a final judgment and the jurisdictional facts presented to the state court were essentially identical to those now before the federal court. *See, e.g.*, *Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1005 (N.D. Ind. 2000). Put another way, collateral estoppel applies only where the parties have had a "full and fair opportunity" to contest the matter at issue. *Id.* (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). Here, further jurisdictional discovery has yielded a different set of facts providing a basis for personal jurisdiction than those that were presented to the state court. Therefore, collateral estoppel does not apply to Plaintiffs' claims.

Defendants next argue that this case should be dismissed or stayed pursuant to the *Colorado River* doctrine. Although federal courts have an "unflagging obligation" to exercise the jurisdiction granted to them, *Colorado River*, 424 U.S. at 817, the doctrine permits courts to defer to a "concurrent state proceeding" in the interest of "wise judicial administration." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818)). Determining whether abstention under *Colorado River* is appropriate involves a two-part inquiry. *Id*. at 498. The court first determines whether the concurrent state and federal actions are "actually parallel." *Tyrer v. City of South Beloit*, 456 F.3d 744, 751 (7th Cir. 2006). If so, it must then assess whether "exceptional circumstances" justify abstention. *Adkins*, 644 F.3d at 498. Any substantial doubt that a state-court proceeding will adequately resolve the issues between the parties must be resolved in favor of exercising federal jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

Here, there simply is no parallel state-court action to which to defer, and therefore there is no basis for dismissal or abstention. Defendants argue that the state-court action is "still pending" because the state court granted Plaintiffs leave to file an amended complaint. But, as stated above, an agreed order was entered on October 4, 2011, dismissing all counts against GMH, Orifarm, and Heritage. (ECF No. 39-7.) It is apparent that the state-court proceeding will not resolve the issues between the parties, and therefore this court is obligated to exercise its jurisdiction. Defendants' motion to dismiss or stay the action pursuant to the *Colorado River* doctrine is denied.

**C. Rule 12(b)(6)**

1. <u>Count II (Aiding and Abetting Fraud)</u>

Defendants argue that Count II of the complaint fails to state a claim upon which relief can be granted because Illinois does not recognize an independent tort of aiding and abetting. As Plaintiffs point out, however, the Seventh Circuit has explained that "the rejection of aiding and abetting as an independent tort is not the same thing as saying that there is never liability for aiding and abetting." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). The circuit court went on to state:

> Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation. *See Thornwood, Inc. v. Jenner & Block*, [799 N.E.2d 756, 767 (Ill. App. Ct. 2003)].

*Id.*

In Count II, Plaintiffs allege that Rezco entered into the Settlement Agreement as part of a fraudulent scheme to mislead Plaintiffs about their security interest in Rezco's ownership interests in Heritage, when meanwhile, Rezco was planning to transfer those interests to Defendants. Alternatively, they allege that Rezco misrepresented his authority to enter into the Settlement Agreement. They further allege that Defendants were aware that Rezco was misleading Plaintiffs so that they would not attempt to prevent the transfer of his interests in Heritage or to exert their rights as preferred creditors. Finally, Plaintiffs allege that Defendants substantially aided the fraudulent scheme by wiring money to Rezco's counsel and keeping the transactions confidential. The court concludes that these allegations suffice to state a claim for aiding and abetting a tort under Illinois law.

Defendants also argue that Rezco's alleged actions support a claim for breach of the Settlement Agreement, but that such a claim sounds in contract rather than tort law. They further argue that even if Plaintiffs has alleged a tort claim, Plaintiffs have not alleged facts supporting a fraud claim with the particularity required by Rule 9(b).

Illinois courts have recognized that facts involving a contract can sometimes support a fraud claim, although not every party "with a breach of contract claim [can] open the door to tort damages by alleging that the promises broken were never intended to be performed." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992); *see also Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (A "statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities . . . ordinarily does not constitute an actionable misrepresentation."). The elements of a claim for fraudulent misrepresentation, or common law fraud, under Illinois law are: "(1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 957 (N.D. Ill. 2011) (citing *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010) and *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989)). Plaintiffs' reliance on the fraudulent statements must have been reasonable. *Minch v. George*, 917 N.E.2d 1169, 1178 (Ill. App. Ct. 2009). Moreover, as claims of fraud must be pleaded with particularity pursuant to Rule 9(b), the complaint must also allege with particularity the misrepresentations that were made, who made them, and when and to whom they were made.

13

Accepting all alleged facts as true for purposes of this motion, Plaintiffs have adequately pleaded a claim for fraud. Plaintiffs have alleged that Rezco made false representations, and not merely false promises to perform under the Settlement Agreement. The complaint points to specific alleged misrepresentations: it alleges that Rezco represented to Plaintiffs that he was owner of an 80% interest in Heritage, when he was in fact in the process of diluting his ownership interest, and he also represented that he had the authority to enter into the Settlement Agreement and that it would legally bind him, when as Defendants later claimed, he may have lacked such authority. (Compl. ¶¶ 55-56.) Plaintiffs claim that these misrepresentations were made by Rezco and Defendants with the intent of inducing Plaintiffs to enter into the Settlement Agreement, despite the fact that Rezco had no intention of paying the debt he owed to Plaintiffs. Further, Plaintiffs assert that they were damaged by the misrepresentations because they lost their ability to seize Rezco's ownership interests in Heritage or otherwise assert their security interest in the shares. As these allegations, taken as true, support a claim of fraud, Plaintiffs have also adequately pleaded in Count II that Defendants aided and abetted fraud.

2. Lack of Damages

Defendants argue that all counts of the complaint should be dismissed because Plaintiffs have sustained no damages or harm, and therefore fail to state a cause of action for any of their theories of liability. They argue that Plaintiffs' alleged security interest in the membership units in Heritage remains in effect despite the transfer of the units to Defendants. Plaintiffs, however, argue that they have been damaged because Rezco liquidated his assets before Plaintiffs could assert their security interest, and that under the Settlement Agreement, Rezco should have used his ownership interests to pay off his debts to them, rather than transferring his interests to Defendants in exchange for capital and loan forgiveness. Plaintiffs also argue that if the

14

Settlement Agreement is invalid, they have lost their ability to enforce Rezko's debts to them because of their reliance on the agreement. The court concludes that Plaintiffs have alleged damages resulting from Defendants' alleged conduct and therefore denies Defendants' motion to dismiss the complaint on the basis that Plaintiffs have not been injured.

3. Conspiracy (Count III)

Defendants argue that civil conspiracy depends on the existence of an underlying tort liability, and that in this case there is no such underlying liability. Defendants further argue that the allegations of conspiracy in the complaint rest upon the same factual allegations as the tortious interference and aiding and abetting claims in Counts I and II, and that the additional conspiracy count should be dismissed as redundant and unnecessary.

Civil conspiracy is a recognized cause of action in Illinois. Under Illinois law, "[c]ivil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). A conspiracy claim serves "to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." *Id.* To be liable as a civil conspirator under Illinois law, a party must "understand[ ] the general objectives of the conspiratorial scheme, accept[ ] them, and agree[ ], either explicitly or implicitly to do its part to further those objectives." *Id.*

As stated above, the court finds that Plaintiffs have sufficiently alleged that Rezco made fraudulent misrepresentations in the Settlement Agreement. Thus, Plaintiffs have alleged an underlying tort, as required to support the conspiracy count. As to whether the aiding and abetting count of the complaint renders the conspiracy count redundant, the court recognizes that aiding and abetting and conspiracy are alternative theories of liability which Plaintiffs are

15

pursuing to establish liability on Defendants' part for the tort of fraud. But the court declines to dismiss the conspiracy count as redundant at this stage in the litigation. Because the elements required to establish conspiracy and aiding and abetting liability are different, Plaintiffs may pursue these theories in the alternative as ways to establish Defendants' liability for fraud. *See e.g.*, *F.D.I.C. v. Parzygnat*, No. 10 C 7038, 2011 WL 3704731, at *6 (N.D. Ill. Aug. 23, 2011) (declining to strike as redundant claims alleging "aiding and abetting fraud" and "concert of action to commit fraud" where plaintiff had not also asserted a fraud claim against a defendant).

4. Unjust Enrichment (Count IV)

Defendants' final argument pursuant to Rule 12(b)(6) is that unjust enrichment, pleaded in Count IV, is not a separate cause of action. There is conflicting Illinois precedent on the question of whether unjust enrichment stands as an independent claim or requires an underlying tort claim to support it. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516-17 (7th Cir. 2011) (discussing contradictory Illinois case law on this issue). The Seventh Circuit has proposed the following resolution to this doctrinal conflict: "Where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Id*. at 517 (quoting *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007)). Here, as Plaintiffs have pleaded a fraud claim that has survived Defendants' motion to dismiss, the court finds no basis to dismiss the unjust enrichment claim.

Plaintiffs further argue that, if Plaintiffs' security interest in the ownership units remains in effect, Defendants have received no benefit from the transfer of the units and were therefore not unjustly enriched. This argument fails, as Plaintiffs have alleged that Defendants benefitted from Rezco's tortious acts by gaining Rezco's ownership interests in Heritage in exchange for

16

forgiveness of Rezco's debts to them, when those ownership interests were allegedly required to be used to pay Rezco's debts to Plaintiffs under the terms of the Settlement Agreement. Plaintiffs have sufficiently alleged that Defendants benefitted unjustly from the alleged fraud.

**D. Motion to Strike**

Defendants ask the court to strike references in the complaint to the fact that Auchi was convicted in absentia of criminal fraud in France, and to the fact that Rezco has been convicted of several crimes. Defendants argue that these matters are immaterial and prejudicial. The court agrees that Auchi's criminal history has no bearing on the claims raised in the complaint and is potentially prejudicial, and it strikes Footnote 2 of the complaint accordingly. (*See* Compl. at 4 n.2.) This material is stricken without prejudice to Plaintiffs' later ability to introduce it, if admissible, to challenge Auchi's credibility. The court finds, however, that Rezco's convictions are relevant to Defendants' motivation to restructure the ownership of Heritage and the land parcel. As they are relevant to the claims asserted, the court declines to strike the references to those convictions in Footnote 1 of the complaint.

### IV. CONCLUSION

For the reasons stated above, the court denies Defendants' motion to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(6). Defendants' motion to dismiss the complaint based on *res judicata* is denied, as is their motion to stay based on the *Colorado River* doctrine. The court strikes the allegations in the complaint that refer to Auchi's criminal history.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 5, 2013