IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEMIR D. SIRAZI, GREENSTONE CAPITAL, L.L.C., and MARDINI, INC., <br><br>Plaintiffs, <br><br>v. <br><br>GENERAL MEDITERRANEAN HOLDING, SA, ORIFARM, SA, and NADHMI AUCHI, <br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 12 C 653

# **OPINION AND ORDER**

Semir Sirazi, Greenstone Capital L.L.C., and Mardini, Inc. (collectively "plaintiffs") sued General Mediterranean Holding, SA ("GMH"), Orifarm, SA ("Orifarm"), and Nadhmi Auchi (collectively "defendants") alleging torts arising out of conduct relating to a Settlement Agreement ("the Agreement") with non-parties Antoin Rezko ("Rezko") and his company Rezmar Corporation. It is alleged that defendants participated in a scheme in which Rezko transferred his ownership in a valuable 62-acre land parcel in Chicago to defendants, leaving Rezko with no assets from which plaintiffs, secured creditors, could recover millions of dollars owed to them. Defendants contend that Rezko was also

indebted to them for millions of dollars and that his ownership, after being indicted for fraud, prevented the development of the land parcel in which they had invested over $130,000,000.  The case is now before the court on defendants' motion for summary judgment.

Plaintiffs are alleged to be Illinois residents.  GMH and Orifarm are alleged to be Luxembourg companies based in Luxembourg.[1]  Orifarm is a subsidiary of GMH.  Auchi is alleged to be a citizen of the United Kingdom and the owner and Chairman or head of GMH and Orifarm.  Auchi and Orifarm moved to dismiss the complaint for lack of personal jurisdiction.  Defendants were twice ordered to produce a Rule 30(b)(6) witness to testify as to the structure and ownership of the entities.  As a sanction for failing to comply with the discovery orders, Judge Gottschall determined that personal jurisdiction be taken as established as to defendant Auchi, and defendant Auchi was deemed to exercise full ownership and control over GMH for all purposes of this litigation.  *See* Order dated March 5, 2013 (ECF 131).  With respect to Orifarm, the court found that it was alleged that Orifarm was a primary participant in alleged wrongdoing expressly aimed at an Illinois resident with the knowledge that the effects of that

---

[1]There are also indications that they are incorporated in Liechtenstein, but that would not affect diversity jurisdiction.

conduct would be felt in Illinois. Personal jurisdiction was found to be proper. *Sirazi v. Gen. Mediterranean Holding, SA*, 2013 WL 812271 (N.D. Ill. March 5, 2013) ("*Sirazi II*") (ECF 134). Jurisdiction exists over the subject matter and the parties. 28 U.S.C. § 1332(a)(2).

Defendants moved to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), based on the *res judicata* effect of rulings in a previous Illinois state Court action brought by plaintiffs against defendants which was dismissed without prejudice. The State Court had held that plaintiffs had failed to establish jurisdiction over defendant Auchi. In the alternative, defendants moved to stay this case pursuant to the *Colorado River* doctrine. Pursuant to Rule12(f)(2), defendants also moved to strike certain allegations in the Complaint that refer to defendant Auchi's criminal history. With the exception of the motion to strike, the motions were denied. *See Sirazi II*. Plaintiffs subsequently amended the Complaint.

In the First Amended Complaint ("FAC") (ECF 170), plaintiffs allege tortious interference with contractual relations (Count I), aiding and abetting fraud (Count II), civil conspiracy (Count III), and unjust enrichment (Count IV), all in violation of Illinois law. Plaintiffs no longer seek an accounting (Count V) or injunctive relief (Count VI). Plaintiffs seek actual and punitive damages.

On a motion for summary judgmnt, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. ***Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.***, 555 U.S. 271, 274 n.1 (2009); ***Malen v. MTD Prods., Inc.***, 628 F.3d 296, 303 (7th Cir. 2010); ***Stokes v. Bd. of Educ. of City of Chicago***, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. ***Ponsetti v. GE Pension Plan***, 614 F.3d 684, 691 (7th Cir. 2010); ***Outlaw v. Newkirk***, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or it will bear the burden of proof at trial. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986); ***Montgomery v. Am. Airlines, Inc.***, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. ***Celotex***, 477 U.S. at 324; ***Freundt v. Allied Tube & Conduit Corp.***, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); ***O'Brien v. Encotech Constr.***, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See* ***Lorillard Tobacco Co. v. A & E Oil, Inc.***, 503 F.3d 588, 594-95 (7th Cir. 2007); ***Yasak v. Ret. Bd. of Policemen's Annuity & Benefit***

*Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt"

> regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Central to this case is the intent and meaning of the Agreement entered into as of May 5, 2006 by "ANTOIN S. REZKO ('Rezko') as the sole shareholder of Rezmar and as guarantor (Rezmar and Rezko are sometimes collectively referred to as 'Borrowers')." The other parties to the Agreement are plaintiff Semir Sirazi described as "Collateral Provider," referred to in the Agreement as "Sirazi/CP," and plaintiffs Greenstone Capital, L.L.C. and Mardini, Inc., described as creditors of the Borrowers and Rezmar affiliates.

Defendants state that Rezko was not individually bound; that he acted on behalf of Rezmar only. They ignore the individual Guarantee which is part of the Agreement. The undertakings in the Agreement and the guarantee make clear that Rezko was individually bound by the Agreement.

It is stated in the Agreement that the Borrowers and others are in default with respect to several agreements owing $7,700,000 and liable on a $5,000,000

Republic Bank loan for which Sirazi provided collateral and a bank guaranty. The Borrowers promise to pay $7,700,000, pay or refinance a Republic Bank loan with Mutual Bank, and secure the release of Sirazi's collateral securing the Republic Bank loan.

The Agreement describes the manner of the intended payment of the agreed debt. It is warranted that Rezko had authority to enter into the Agreement and that Rezko has an 80% "Ownership Interest" in Heritage Development Partners, LLC ("Heritage"), an Illinois limited liability company, defined in the Agreement as the "Company." (Heritage was the owner of a 49% interest in Riverside District Development, LLC, the entity that held title to the land parcel). Heritage was stated to be engaged in a private placement offering of additional membership interests in Heritage (which could produce as much as $35,000,000). Rezko's share in the "Distributions" from the offering was committed to the repayments promised in the Agreement.

The Borrowers granted a Uniform Commercial Code security interest in Distributions from "Ownership Interests" in Heritage. Defendants contend that a security interest was never perfected because the UCC filing was incomplete and defective, and, they state that Sirazi had no security interest and was not a secured creditor senior to their position as creditors.

Plaintiffs have alleged they were damaged because they lost their ability to obtain Rezko's ownership interests in payment of the sums due and promised to them--possibly as senior creditors. Defendants argue that, given prior claims on the land parcel, plaintiffs will not be able to show that there was sufficient value in the land parcel to satisfy plaintiffs' claims against Rezko, and, accordingly, plaintiffs have not suffered any recoverable loss.

The words "Company," "Ownership Interests," and "Distributions" are defined in the Agreement. Company is defined to be Heritage. Ownership Interests is defined to include "direct or indirect ownership" in [Heritage] owned by Rezko. Set. Ag. (ECF 260-19) ¶ 5(f)(iv). The parties disagree as to what is included in the broadly defined term Distributions.

Distributions is defined as follows:

> **"Distributions"** shall collectively mean: (A) all certificates of membership interests (resulting from or in connection with the exercise of stock or certificate splits, reclassifications, warrants, options, non-cash dividends, mergers, consolidations, and all other distributions), all dividends, payments, returns of capital, deferred payments, money and other distributions of any and every kind whatsoever (whether in cash or in kind) paid or payable at any time on or in respect of, and all proceeds of, any of the Ownership Interests or any documents or instruments creating, evidencing, constituting or relating to any of the Ownership Interests, of whatever kind or description, real or personal, whether in the ordinary course of business or in partial or total liquidation or dissolution, or as

> part of or in connection with any recapitalization, reclassification of capital, or reorganization or reduction of capital, or otherwise; and (B) all gross proceeds of all loans and other indebtedness received by any Borrower from the Company (directly or indirectly), whether or not derived from the Offering or secured by any of the Ownership Interests and whether or not in exchange for any services rendered by any of the Borrowers.

*Id.* ¶ 5(f)(ii).

The parties disagree as to what is included in the defined term Distributions. If the term is read to mean only distributions from Heritage, the question of the validity of a security interest is moot because there were no distributions from Heritage after May 5, 2006. If, however, the term is construed to include payments made to Rezko by the defendants when he sold his interests in Heritage and MT to them, then plaintiffs were secured creditors with a security interest in the proceeds from those transactions if a security interest was perfected.

The Agreement also states: "Except for the Offering, the Borrowers shall not sell, transfer, encumber or pledge any or all of the Ownership Interests without, in each instance, the prior written consent of Sirazi/CP." *Id.* ¶ 5(d)(iii).

As stated, there were never any sales from the private offering after May 5, 2006. The Borrowers were in default under the payment terms of the Agreement by the July 17, 2006 "resolution date" stated in the Agreement. There

was a release of collateral by Republic Bank when Mutual Bank refinanced the Republic Bank loan; however, the Mutual loan quickly went into default. On November 17, 2006, as required by his guaranty, Sirazi was required to pay the refinanced Mutual loan totaling $5,098,931.

Prior to May 5, 2006, Rezko's interest in Heritage had been transferred to MT Property Holdings, LLC ("MT"), in which Rezko was an 80% member and Michael Rumman was a 20% member. The representation in the Agreement that Rezko was an 80% owner of Heritage was false. However, MT was a holding company. Management of the land parcel was conducted by another entity, Heritage Property Development, Inc. Rezko's ownership interest in Heritage was indirect, but the real value--the interest in the land parcel--remained.

It is alleged that, during early 2007, Rezko agreed to sell his interest in MT and Heritage to defendant Orifarm for approximately $4 million. No notice was given to, nor consent obtained from, Sirazi for this or any of the transactions by which defendants acquired interests from Rezko.

On March 30, 2007, GMH provided Rezko with an unsecured loan in the amount of $3.5 million.

There were two security transactions engaged in by Rezko and Rumman. On July 24, 2007, Orifarm acquired 60 Class B units of Heritage from

Rezko in exchange for non-cash debt forgiveness totaling $26,414,298, which included the March 30, 2007 loan. A cash payment of $1,409,000 was made to Rumman in payment of a promissory note given to him by Rezko in exchange for Rumman's interest in MT. Contemporaneous with the transaction, Rezko acquired Rumman's interest in MT. Rezko exchanged units in MT for 60 Class B units in Heritage. On February 11, 2008, effective as of December 6, 2007, Rezko sold units in MT to Orifarm. The stated acquisition price was $4 million consisting of $200,000 of loan forgiveness and a cash payment of $3,800,000.

The evidence is in dispute as to when defendants first knew of all or any of the provisions of the Agreement. There is evidence, however, supporting that some provisions were know to agents of defendants before the buyout of Rezko's interests.

Defendants state that Rezko did not have assignable rights in Heritage because MT owned Heritage, not Rezko. MT was simply a holding company. However, Rezko had indirect ownership in Heritage the value of which depended on the interest in the land parcel.

Defendants contend that he did not have authority (which he warranted) to enter into the Agreement because the operating agreements of Heritage and MT each required the missing consent of the other member, Rumman. They state that

the member's consent was necessary to create a UCC security interest or to sell ownership interests.  Whether all of the stated objections are open to the defendants is questionable.  Even if a security interest did not attach, a disputed issue, that defect, alone, would not necessarily invalidate the rest of the undertakings in the Agreement.  Also, whether any applicable member consent provisions were, in effect, waived by the only person involved, Rumman, who had a close relationship with the defendants and who also sold his own Heritage interests at the same time, is a disputed question.

Defendants also raise affirmative defenses of privilege and justification that are not appropriate for resolution at this time.

Defendants seek summary judgment on the tortious interference with contract claim (Count I) arguing that the facts do not support a finding that plaintiffs had a valid contract with Rezko, or that defendants participated in Rezko's breach, or because defendants' conduct was justified.  To prevail on this claim, plaintiffs must prove:  "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages."  ***Echo, Inc. v. Timberland Mach. & Irrigation, Inc.***, 661 F.3d

959, 968 (7th Cir. 2011). Defendants say that the action fails under the first, third, and fourth elements of the claim. Defendants do not dispute the second element, their awareness of the Agreement. Def. Br. 3 (ECF 262).

Without ruling on the correctness of all of the parties' constructions of the Settlement Agreement, it is clear that the Agreement required Rezko to give the plaintiffs notice and obtain their consent to the transfer of his ownership interests acquired by the defendants. No such notice or consent was obtained, and there is circumstantial evidence that the defendants' actions can be construed as participation in a notice-and-consent provision breach. Without restating the many legal and factual disputes discussed in the very extensive briefs and submissions, summary judgment cannot be granted on Count I.

In Count II of the FAC, plaintiffs contend that defendants are liable for aiding and abetting fraud. Defendants state that Illinois does not recognize an independent tort of aiding and abetting. The Seventh Circuit has held the rejection of aiding and abetting as an independent tort is not the same thing as saying that there is never liability for aiding and abetting. Under Illinois law, it must be shown that: "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the

violation." ***Hefferman v. Bass***, 467 F.3d 596, 601 (7th Cir. 2006); *see also* ***Thornwood, Inc. v. Jenner & Block***, 344 Ill. App. 3d 15, 799 N.E.2d 756, 767 (1st Dist. 2003); ***In re Peregrine Fin. Group Customer Litig.***, 2014 WL 4784113 *9 (N.D. Ill. Sept. 25, 2014).

Plaintiffs have tendered evidence which supports finding that Rezko made false representations in the Agreement and that he did not intend to perform or actually perform the required undertakings. Those false representations may be understood as fraudulent in the sense that they were intended to induce plaintiffs to withhold action and extend credit which they did. It is conceded that Rezko transferred ownership interests to the defendants without obtaining plaintiffs' consent as required by a provision in the Settlement Agreement. If, as contended, defendants were aware of Rezko's obligations and nevertheless purchased his ownership interest, their conduct could constitute aiding and abetting a fraud.

Taken as true, the facts supported by evidence are sufficient to show defendants aided and abetted fraud and, therefore, require that summary judgment be denied with respect to Count II.

Civil conspiracy is a cause of action in Illinois. It consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful

means.  ***Independent Trust Corp. v. Stewart Info. Servs. Corp.***, 665 F.3d 930, 938-39 (7th Cir. 2012); ***Adcock v. Brakegate, Ltd.***, 164 Ill. 2d 54, 645 N.E.2d 888, 894 (1994).  A civil conspiracy claim extends liability in tort beyond the wrongdoer to those who have planned or assisted wrongful acts.  It must be shown that the conspirator understood and accepted the conspiracy scheme and agreed explicitly or implicitly to take part in the objectives and performed some act in furtherance of the conspiracy.  In this case, plaintiffs state that there was an unlawful disposition of collateral granted to defendants.  It is a felony to sell or otherwise willfully dispose of collateral.  810 ILCS 5/9-315.01.  If proven, this conduct would be an unlawful act.  Plaintiffs have presented sufficient evidence to require that summary judgment be denied as to the Count III civil conspiracy claim.

Count IV of the FAC alleges unjust enrichment.  Illinois law is unclear as to whether unjust enrichment is an independent cause of action.  The Seventh Circuit has held that, when there is a fraudulent conduct claim, resolution of the fraud claim will be dispositive of the unjust enrichment claim as well.  ***Cleary v. Philip Morris Inc.***, 656 F.3d 511, 516-17 (7th Cir. 2011).  Plaintiffs have presented sufficient evidence to warrant a trial on the allegations of fraud.  Accordingly, summary judgment must be denied as to Count IV.

Plaintiffs have not opposed defendants motion for summary judgment on Count V (accounting) and Count VI (injunctive relief). Defendants will be granted summary judgment on those claims.

The next hearing in this case will be set after the court considers the pending motions *in limine*. If any of the motions *in limine* have been rendered moot by the dismissal of Counts V and VI or otherwise, the parties shall promptly inform the court.

IT IS THEREFORE ORDERED that plaintiffs' motions to strike [266] and exclude affidavits [274] are denied. Defendants' motion for summary judgment [255] is granted in part and denied in part. Counts V and VI of the First Amended Complaint are dismissed.

ENTER:

*/s/ William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: FEBRUARY 24, 2015