IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEMIR D. SIRAZI, GREENSTONE )
CAPITAL, L.L.C., and MARDINI, INC., )
)
          Plaintiffs, )
)
    v. ) No. 12 C 653
)
GENERAL MEDITERRANEAN )
HOLDING, SA, ORIFARM, SA, )
and NADHMI AUCHI, )
)
          Defendants. )

# **OPINION AND ORDER**

This case is before the Court for construction of a Settlement Agreement ("the Agreement") which is central to claims of intentional interference with contractual relations (Count I), aiding and abetting fraud (Count II), civil conspiracy (Count III), and unjust enrichment (Count V) asserted by plaintiffs Semir Sirazi, Greenstone Capital, L.L.C., and Mardini, Inc. against defendants General Mediterranean Holding, SA ("GMH"), Orifarm, SA ("Orifarm"), and Nadhmi Auchi. The parties have presented their differing interpretations of the Settlement Agreement including defendants' claim of invalidity.

Defendants' motion for summary judgment was denied and motions *in limine* have been considered. See ***Sirazi v. Gen. Mediterranean Holding, SA***, 2015 WL 791159 (N.D. Ill. Feb. 24, 2015); Order dated March 5, 2015 [ECF 381]. In order to provide guidance for the presentation of evidence and for the preparation of jury instructions, it is necessary to resolve the parties' differing interpretations of certain terms of the Agreement that relate to the remaining claims.

Construction of a written contract is ordinarily a question of law for the court. When the terms of a contract are not ambiguous, the meaning of the contract is determined from the face of the document, without considering parole evidence or extrinsic aids. ***Cannon v. Burge***, 752 F.3d 1079, 1088-89 (7th Cir. 2014). If ambiguity is found to exist in a contract, and it is necessary to resort to disputed parole evidence, the question of interpretation is for the jury based on its resolution of any disputed evidence. ***Harmon v. Gordon,*** 712 F.3d 1044, 1050 (7th Cir. 2013). However, if the pertinent extrinsic evidence is undisputed, construction of the contract is still a matter of law for the court. ***Id.***

The Agreement was entered into by sophisticated parties who were engaged in a series of real estate and business transactions. The terms were negotiated by attorneys. A provision states that "all prior statements, agreements

or representations of the parties, whether oral or written, are deemed to be merged herein."

The Settlement Agreement was entered into as of May 5, 2006 by Rezmar Corporation ("Rezmar") and Antoin S. Rezko ("Rezko"), described as the sole shareholder of Rezmar and as guarantor, referred to in the Agreement as "Borrowers." The other parties are Semir D. Sirazi,("Sirazi"), described as collateral provider, Greenstone Capital, L.L.C. ("Greenstone"), and Mardini, Inc. ("Mardini"), referred to collectively as "Creditors." The terms of the Agreement, and a separate guaranty by Rezko made part of the Agreement, establish that Rezko is individually bound and responsible for performance of the terms of the Agreement.

The purpose for the Agreement is stated. It is recited that the Borrowers and Daniel Mahru are in default under a line of credit agreement. Also, it is stated that a $5,000,000 bank loan to the Borrowers from Republic Bank, for which Sirazi provided a guaranty and collateral, is due on May 17, 2006. Further, it is recited that the Borrowers and an affiliate of Rezmar are in default under a contract with Greenstone and in default under a contract with Mardini. To avoid litigation, the parties bind themselves by the Agreement.

The Agreement commits the Borrowers to pay the Republic Bank loan or pay Mutual Bank if the loan is assigned to that Bank, and to pay Sirazi all amounts paid by him in connection with his guaranty of any loan by Mutual Bank. In consideration of continuing to guaranty the Mutual Bank loan, Sirazi will be paid up to $100,000 depending on when the loan is paid. Full payment is to be made by no later than July 17, 2006.

Next, it is agreed that the Borrowers pay to the Creditors $7,700,000 in respect of the other defaults specified in the Agreement. This sum is referred to as the Agreed Debt.

It is represented and warranted in the Agreement that Rezko is the owner of eighty percent of the Ownership Interests in Heritage Development Partners LLC, an Illinois limited liability company ("Heritage"). The term Ownership Interests is further defined to include all direct or indirect ownership interests in Heritage.

In support of their undertakings to pay the Agreed Debt, the Borrowers grant a "security interest" to Sirazi and the Creditors of all right and interest to all Distributions from Rezko's Ownership Interests in Heritage, defined in the Agreement as the Secured Collateral. The effect of granting a security interest

was to make the Creditors (plaintiffs) secured creditors of the Borrowers with priority rights to receive Distributions from the Secured Collateral.

Also in support of their obligation to pay the Agreed Debt, the Borrowers provided an Agreed Debt Note in the sum of $3,000,000.

The definition of the term "Distributions" in the Agreement includes the proceeds from any direct or indirect sale by Rezko of any part of his membership interests in Heritage. (It is undisputed that, at the date of the Agreement, the Heritage interests were owned by MT Property Holding, LLC ("MT") in which Rezko was an 80% owner of Class B voting membership interests and Michael Rumman was owner of 20% of the Class B voting membership interests.)

The Agreement describes an intended offering for sale of additional interests in Heritage to obtain funds for the payment of the sums due the Creditors. Except for that offering (which never occurred), and until all sums are paid, Rezko promised not to sell any Ownership Interests in Heritage without the consent of Sirazi nor to modify Heritage company documents without prior notice to Sirazi. These are separate obligations that exist separately and independently of the other terms of the Agreement granting a security interest in Distributions.

The remaining terms of the Agreement do not require construction in order to resolve the issues in this case; however, defendants contend that the

Agreement was invalid when made because of conflicting operating agreement provisions. It is also argued that, because the UCC security interest created in the Agreement was never perfected by a proper filing with the Illinois Secretary of State, plaintiffs never became secured creditors having priority interest in the Secured Collateral.

Defendants state that ¶ 5(d)(iii) of the Agreement prohibiting Rezko from selling any ownership interest in Heritage without the written consent of Sirazi and ¶ 5(d)(i) requiring prior written consent for modification of Heritage company documents renders the Settlement Agreement invalid because those terms are contrary to § 10.1.1 of the Heritage Operating Agreement which prohibits transferring "all or any portion of Units or any interest therein without the prior written consent of the Manager [Heritage Property Development , Inc. of which Michael Rumman was president]." Defendants also rely on the operating agreement of MT (which actually held the Heritage ownership interests), which had a provision prohibiting the transfer of any ownership interest without the unanimous consent of all members. These contentions fail for a number of reasons.

First, the operating agreement provisions did not prohibit him from also promising to obtain the consent of Sirazi before selling or modifying his interests

in Heritage even if he was bound to comply with the consent requirements of the operating agreements.  There is no conflict in these provisions which support an argument of invalidity.  Given the size of the debts owed and the nature of the security interest granted, the consent and notice provisions in the Agreement are consistent with an intent to insure that ownership interests in Rezko's only unencumbered asset not be sold or modified without consent of and notice to the secured creditors.

Even if it could be found that the extrinsic operating agreement provisions create a conflict, defendants lack standing to assert that the Agreement is invalid.  Defendants are third-parties with respect to the Agreement as well as the two operating agreements.  Illinois follows the **Restatement (Second) of Contracts** (1981) view that third parties cannot assert anti-assignment clauses.  ***Bank of Am., N.A. v. Moglia***, 330 F.3d 942, 948 (7th Cir. 2003).  Comment d of § 322 of the **Restatement** states:  "Ordinarily a contract prohibition of reassignment is for the benefit of the obligor.  In such cases third parties cannot assert the invalidity of a prohibited assignment if the obligor makes no objection."  That is the situation in this case and there are no circumstances or exception alleged that support a different application of the rule.

Arguably, the only party who could advance the consent provisions in the operating agreements as in conflict with the Agreement is Michael Rumman. Rumman had membership interests in MT and indirectly in Heritage. Rumman, however, is alleged to have sold his interests to Rezko or to defendants in the same transactions in which Rezko sold interests to defendants. Rumman's sale moots any objections based on the operating agreements.[1]

Defendants' contention that the Agreement is invalid is denied.

Defendants contend that plaintiffs are not secured creditors of Rezko's interests because a security interest in the collateral was never perfected pursuant to the UCC provisions of the Illinois statue. Following the execution of the Agreement, the attorney representing Sirazi sent papers to the Illinois Secretary of State for filing. Corporate Services Corporation, a filing company, returned a receipt indicating it had filed a UCC financing statement and attached an acknowledgment copy, stamped "Received" by the Illinois Secretary of State's Office. It is undisputed that, at the time of defendants' purchase of Rezko's ownership interests in Heritage and MT in July of 2007, defendants made a search

---

[1]Plaintiffs also argue that Rumman waived any possible objection at the time the Agreement was being negotiated, but, to the extent relevant, this is a question of fact to be resolved at trial.

for any UCC financing statement relating to Antoin Rezko.  The search revealed a UCC financing statement filed on Sirazi's behalf on May18, 2006, but it did not have a description of the collateral attached.  The search stated, in part: "This FINANCING STATEMENT covers the following collateral:  SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF."  It is not disputed that defendants were aware of the contents of the Agreement in July of 2007; however the attorney who represented them may not have been informed of the existence of the Agreement and was not aware of the security interest granted thereby.

For the purpose of today's ruling, it is assumed that the filing of the financing statement was defective.  Nevertheless a security interest granted by a debtor is enforceable against the debtor even if not perfected.  *See* 810 ILCS 5/9-203; *cf.* **In re Lortz**, 344 B.R. 579, 586 (Bankr. C.D. Ill. 2006).  Also, perfection is irrelevant because defendants are not secured parties or lien holders. **In Re Vic Supply Co.**, 227 F.3d 928, 930-32 (7th Cir. 2000) (unperfected security interest enforced); **Wachovia Bank Nat'l Ass'n v. EnCap Golf Holdings, LLC**, 690 F. Supp. 2d 311, 333-34 (S.D.N.Y. 2010) (unperfected security interest enforced).  There are no equities which support ignoring the security interest collateral granted by Rezko under the terms of the Agreement.  The defendants

were aware of the Agreement and the attempted, if defective, UCC filing at the time they purchased Rezko's interests.

IT IS THEREFORE ORDERED that:

(1) The Settlement Agreement as construed is valid and grants a Secured Collateral interest to plaintiffs.

(2) This case is set for a hearing on status on April 9, 2015 at 2:00 p.m.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: APRIL 1, 2015

were aware of the Agreement and the attempted, if defective, UCC filing at the time they purchased Rezko's interests.

IT IS THEREFORE ORDERED that:

(1) The Settlement Agreement as construed is valid and grants a Secured Collateral interest to plaintiffs.

(2) This case is set for a hearing on status on April 9, 2015 at 2:00 p.m.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: APRIL 1, 2015