IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEMIR D. SIRAZI, GREENSTONE CAPITAL, L.L.C., and MARDINI, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 12 C 653 ) |
| GENERAL MEDITERRANEAN HOLDING, SA, ORIFARM, SA, and NADHMI AUCHI, | ) ) ) ) ) |
| Defendants. | ) |

# **OPINION AND ORDER**

After a jury trial, this case is now before the court on defendants' renewed motions pursuant to Fed. R. Civ. P. 50(b) and 59(a) for judgement as a matter of law or, in the alternative, for a new trial; and on plaintiffs' Rule 59(e) motion to amend the judgment to add prejudgment interest.[1]

The court may not enter a judgment as a matter of law after a jury verdict if there is evidence together with reasonable inferences to be drawn therefrom that demonstrates a factual dispute or where the assessment of the credibility of the

---

[1]Plaintiffs have also moved for the imposition of costs. The amount of costs recoverable is in dispute. That dispute will be considered after the judgement becomes final.

witnesses or the determination regarding conflicting evidence is decisive.  Where, as here, subject mater jurisdiction is based on diversity and substantive state law applies, federal courts consider state law standards with respect to motions to set aside jury verdicts.  ***Bachenski v. Malnati***, 11 F.3d 1371, 1375 & n.3 (7th Cir. 1993); ***Deputy v. Lehman Bros., Inc.***, 374 F. Supp. 2d 695, 700 (E.D. Wis. 2005). Illinois law provides that "[a] verdict will be upset and a contrary judgment entered only if 'all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.'" ***Bachenski***, 11 F.3d at 1375 (quoting ***Pedrick v. Peoria & E. R.R. Co.***, 37 Ill. 2d 494, 229 N.E.2d 504, 513 (1967)); ***Amerisure Ins. Co. v. Roll Serv., Inc.***, 2003 WL 21518310 *1 (N.D. Ill, June 30, 2003) (same); ***Bruntjen v. Bethalto Pizza, LLC***, 2014 IL App (5th) 120,245, 18 N.E.3d 215, 230 (2014), *appeal denied*, 23 N.E.3d 1200 (2015) (same).

## The Evidence

Antoin Rezko ("Rezko"), already convicted and incarcerated for fraud, money laundering, and abetting bribery at the time of the trial, previously owned or controlled an interest in a 62-acre parcel of land located in the City of Chicago south of Roosevelt Road along the Chicago River ("the Parcel").  It was to be used

to build urban housing and a business center.  In 2005, defendant General Mediterranean Holding , SA ("GMH") agreed to purchase an interest in the Parcel for approximately $131 million.  GMH is an international development firm with assets of over $4 billion.  GMH and Rezko became co-owners of the Parcel with Rezko having a 49% voting interest and GMH having the remaining 51% voting interest.

Defendant Nadhmi Auchi ("Auchi") is the Chairman and controlling owner of GMH.  Defendant Orifarm, SA is a subsidiary of GMH, which indirectly acquired Rezko's interest in the Parcel.  GMH's activities in the United States are managed by Mohammed Al-Miqdadi, Auchi's son-in-law.  Rezko and the defendants entered into a series of transactions for the development of the Parcel under Rezko's direction and financed by GMH companies.  Rezko's ownership interest in the Parcel was held by Heritage Development Partners, LLC ("Heritage"), an entity he created.  Later, he created MT Property Holdings, LLC ("MT") and transferred his Heritage ownership to MT.  MT was owned 80% by Rezko and 20% by Michael Rumman, who was in charge of the day to day development activity and reported to Al-Miqdadi.[2]

---

[2]For part of the applicable period attorney Edward Wynn, who worked under the direction of Rumman, also had an interest in MT.  Wynn surrendered

Plaintiff Semir Sirazi("Sirazi") is a Chicago area investor who owns or controls plaintiffs Greenstone Capital, LLC and Mardini, Inc. Sirazi and his companies became creditors of Rezko in transactions unrelated to the development of the Parcel. In February 2006, Rezko owed plaintiffs over $7 million dollars. Also, Sirazi had guaranteed a $5 million bank loan to a Rezko company called Rezmar Corporation. Rezko was also personally liable on the bank loan. The bank loan came due in May 2006 and Rezko was facing defaults on debts due Sirazi. To raise the money due Sirazi and to pay the bank loan, Rezko planned a private offering of a portion of his ownership interests in Heritage.

Rezko and plaintiffs entered into a Settlement Agreement effective May 5, 2006 that provided that Sirazi would continue to provide credit support for the refinancing of Rezko's $5 million bank loan. Rezko and his company acknowledged $7 million of their debts to Sirazi and granted plaintiffs a security interest in proceeds from "direct or indirect" sale of Rezko's interests in Heritage. The Settlement Agreement also required that Rezko provide notice to plaintiffs before any sale of any ownership interests in Heritage. The $5 million bank loan was transferred to another bank which Sirazi guaranteed. Within six months,

---

that interest to MT before the Rezko buyouts by defendants.

Rezko was in default on payments due under the Settlement Agreement and in default on the bank loan. After entering into the Settlement Agreement, Rezko was unable to sell any portion of his Heritage interests at a private offering. Sirazi was required to repay the bank $5,980,000 because of his guarantee. Nothing was paid to plaintiffs on the $7 million debt.

There is abundant evidence that Rezko's development company employees, including a lawyer who for a time worked on the Settlement Agreement, and Michael Rumman, president of a development entity, were aware of the Settlement Agreement, the security interest Rezko granted in the proceeds of any sale of Heritage interests, and the notice obligation to Sirazi required before any sale of interests.

In early October 2006, it was known that Rezko would be indicted for fraud by the Federal Government. On October 9, 2006, Rezko and Rumman met with Auchi in London. Outside of the presence of Rezko, it was decided in the presence of Auchi and Al-Miqdadi that it was "optimal to find a vehicle for [Rezko's] shares [in the Parcel] to be sold to GMH, regardless of which strategy." This decision was not shared with Rezko. He testified that he had no knowledge of defendants' intent to acquire his shares until 2007. It is clear that defendants

initiated the action to obtain Rezko's interests in the Parcel without regard to Rezko's obligations under the Settlement Agreement.

On October 13, 2006, the indictment of Rezko became public. On October 19, 2006 a conference call to discuss the Rezko buyout was held by Auchi, Al-Miqdadi, Rumman, and attorneys Wynn, Plicata, and Freeborn & Peters' Michael Kelly. Auchi became upset that the Settlement Agreement was an obstacle to the buyout. It was decided to disregard the Sirazi security interest despite warnings of litigation--described by a lawyer as a "red light." Auchi testified he obtained GMH board approval for the acquisition of Rezko's interests.

On March 30, 2007, GMH provided Rezko with a loan of $3.5 million. The proceeds were sent to Rezko's counsel. Rezko's counsel wired the money to various persons including $700,000 to Rezko's wife. The wire transfer was discovered by federal prosecutors who informed the court of false statements of the value of assets by Rezko in a bail application. GMH representatives were questioned about transactions with Rezko. Rezko's bond was revoked.

On July 24, 2007, in exchange for a major portion of his Heritage ownership interests, GMH and Fintrade, one of GMH's affiliates, forgave loans to Rezko totaling $26,414,297 and sent to Rezko's counsel another $200,000 loan for

Rezko. As a part of this transaction, Rezko acquired Rumman's Heritage interests in exchange for Rezko's promissory note in the amount of $1.4 million. Rezko turned the shares and the note over to GMH and GMH paid Rumman $1.4 million.

Defendants finalized their buyout of Rezko in February 2008. The transaction attorney who had been representing GMH withdrew. He was never told about the Settlement Agreement before working on the transaction. Al-Miqdadi testified that he never told his transaction attorneys about the Settlement Agreement because it was illegal.[3] Another attorney completed the second secret buyout with knowledge of the Settlement Agreement. In the second transaction, defendants wired $3.8 million to their new transaction attorney who then distributed the funds to Rezko's criminal and civil counsel. The $200,000 loan to Rezko made on July 24, 2007 was forgiven as a part of the second transaction.

The corporate records of defendants show that the total value of the interests purchased from Rezko is accounted for and recorded as $31.8 million.

---

[3]Defendants' contentions that the Settlement Agreement was illegal or void for lack of prior consent by Rumman or because of a defective UCC recording of the security interest by the Illinois Secretary of State are discussed in this court's pretrial ruling as to construction of the Settlement Agreement. *See Sirazi v. GMH*, 2015 WL 1541087 *2-3 (N.D. Ill. April 1, 2015).

GMH acquired Rezko's 50 % interest in the Parcel for $31.8 million, having previously paid $131 million for a 50% percent interest in the Parcel in July 2005. It was reasonable for the jury to assume that the transactions were highly profitable for defendants.

No notice of the sale by Rezko of interests in Heritage or of the diversion of sale proceeds was ever given to plaintiffs. On the evidence presented, the jury could well conclude that efforts were made by Rezko and defendants to prevent plaintiffs from knowing about the transactions between Rezko and defendants.

The only damages witness was called by plaintiffs. This witness testified that plaintiffs were entitled to recover a total of $17,532,000, which was composed of $12.9 million in contract damages plus interest at the 24% default rate specified in the Settlement Agreement. Defendants pointed out on cross examination and in argument that the compounding effect of the contract interest rate equaled as much as 40% of the principal and argued that the rate was excessive. Defendants were also allowed to show that plaintiffs had recovered $493,255 in Rezko's bankruptcy proceedings, which was 1.14% of an allowed claim of over $43 million. The jury awarded plaintiffs $12.9 million plus punitive damages totaling $10 million ($5 million against GMH and $5 million against Auchi).

## The Motions

Judgment as a matter of law for defendants was entered at the close of the evidence on a claim of aiding and abetting fraud (Count II). There was no evidence that defendants participated in the negotiation of the Settlement Agreement. The relationship between Rezko and plaintiffs was that of debtor and creditors. There was no evidence of any fiduciary relationship between plaintiffs and Rezko or between plaintiffs and defendants which could make actionable any false statements or the withholding of information.

The jury was instructed to decide the merits of claims of intentional interference with contract rights (Count I), civil conspiracy (Count III), and unjust enrichment (Count IV).

To prevail on the tort of intentional interference with a contract, plaintiffs were required to prove "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by a

third party and (5) damages." ***Echo, Inc. v. Timberland Mach. & Irrigation, Inc.***, 661 F.3d 959, 968 (7th Cir. 2011).[4]

Rezko and plaintiffs entered into a valid contract in which he granted to plaintiffs a security interest in the proceeds of any sale of his interest in Heritage. There is substantial evidence each defendant was aware of the terms of the Settlement Agreement granting plaintiffs a security interest and the requirement that Rezko give plaintiffs prior notice of any sale of his Heritage interests.

The activity of Rezko's associates who worked on development of the Parcel was financed by GMH. Rumman, who was in charge of day-to-day development reported to Al-Miqdadi, GMH, and Auchi. It was shown that GMH was aware of and secretly planned to acquire Rezko's interests "by whatever strategy"even before Rezko considered a sale to defendants. A lawyer who represented GMH testified that the Settlement Agreement was a "red light" in the

---

[4]Based on the evidence presented at trial and genuine disputes, the jury was instructed that the following elements had to be proven: "(1) There was a valid Settlement Agreement; (the jury was so instructed) (2) The particular defendant was aware of one or both of the pertinent provisions of the Settlement Agreement; (3) The particular defendant intentionally induced Rezko to breach the Settlement Agreement; (4) The particular defendant's conduct proximately caused Rezko to breach the Settlement Agreement; and (5) The particular defendant's conduct proximately caused plaintiffs to be damaged." Jury Instr. at 21 (ECF [496] at 25). The elements were further defined. *See* Jury Instr. at 23-29 (ECF [496] at 27-33).

acquisition of Rezko's interest.  The evidence supports the jury concluding that

GMH[5] induced and assisted Rezko's breach of the Agreement provisions.  GMH's

conduct was shown to be intentional and plaintiffs were damaged by that conduct.

The jury's finding is amply supported by the evidence and may not be set aside.

Civil conspiracy is a tort in Illinois.  It consists of an agreement and

combination of two or more persons for the purpose of accomplishing by some

concerted action an unlawful purpose.  ***Independent Trust Corp. v. Stewart Info.

Servs. Corp.***, 665 F.3d 930, 938-39 (7th Cir. 2012); ***Adcock v. Brakegate, Ltd.***,

164 Ill. 2d 54, 645 N.E.2d 888, 894 (1994).[6]

Transferring ownership interests in a manner designed to disregard

notice and a security interest is "unlawful conduct."  By proving their claim of

intentional interference with the Settlement Agreement, plaintiffs proved an

---

[5]The parties stipulated that, for purposes of liability, GMH and Orifarm should be treated as a single entity.  The jury found in favor of Auchi on the interference with contract claim.

[6]Based on the evidence and contentions of the parties, the jury was instructed that the elements of civil conspiracy were "(1) The alleged conspiracy existed; (2) An overt act was committed in furtherance of the conspiracy; (3) The particular defendant knowingly and intentionally became a member of a conspiracy with Rezko; (4) Unlawful conduct was committed in furtherance of the conspiracy; and (5) An overt act in furtherance of the conspiracy proximately caused damage to plaintiffs." Jury Instr. at 30 (ECF [496] at 34).  *See also id.* at 32-33 [36-37].

unlawful act. The conduct of GMH[7] and Rezko was proof of an intentional combination, an agreement, and overt acts in furtherance of a civil conspiracy. The evidence that supports intentional interference with the Settlement Agreement strongly supports the existence of a civil conspiracy. The jury's finding of a civil conspiracy cannot be set aside.

The jury's finding of a civil conspiracy supports its imposition of the modest (in comparison to GMH's assets) punitive damage award against GMH. The jury reasonably found that the conduct of GMH called for punishment over and above that provided by its reduced compensatory damage award.

Defendant Auchi was found liable only on a claim of unjust enrichment. To be liable for unjust enrichment it must be shown that Auchi took proceeds from Rezko's sale of his ownership interests and that the retention violates principles of justice and equity. ***Cleary v. Phillip Morris Inc.***, 656 F.3d 511, 516 (7th Cir. 2011).[8] There is evidence that the acquisition of Rezko's interest in the Parcel was

---

[7]The jury found in favor of Auchi on the conspiracy claim.

[8]The jury was instructed that the elements of unjust enrichment were: "(1) To plaintiffs' detriment, the particular defendant unjustly took proceeds from Rezko's sale of his ownership interests in Heritage or MT Properties; (2) The particular defendant's retention of the proceeds of Rezko's sale of his ownership interests in Heritage or MT Properties violates the fundamental principles of justice, equity, and good conscience; and (3) The particular defendant's conduct

valuable and obtained at a relatively low price by GMH, but there is no evidence that Auchi personally took any part of Rezko's ownership interests or any of the proceeds from Rezko's sale of the interests. Plaintiffs argue that Auchi can be held liable because he controlled GMH. However, no such claim was made at trial and no proof was offered which would support ignoring the GMH corporate entity. Accordingly, the jury's finding as to Auchi's liability for unjust enrichment (the only claim on which he was found liable) must be set aside.

The Seventh Circuit has stated that "unjust enrichment is not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is unfairly possessing to the plaintiff's detriment." **Cleary**, 656 F.3d at 520; *see generally Restatement (Third) of Restitution & Unjust Enrichment* § 49 (2011). Having concluded that the unjust enrichment finding cannot stand as to Auchi, it follows that the punitive damage award against him, based only on that finding, must also be set aside.

Plaintiffs have moved to amend the judgment to include an equitable award of prejudgment interest based on the jury's award of compensatory

---

proximately caused plaintiffs to be damaged." Jury Instr. at 34 (ECF [496] at 38).

damages. The issue of prejudgment interest was reserved for consideration by the court.

In Illinois, prejudgment interest is recoverable when authorized by an agreement of the parties or by statute. An exception exists for certain equitable claims. ***Tri-G, Inc. v. Burke, Bosselman & Weaver***, 222 Ill. 2d 218, 856 N.E.2d 389, 412 (2006); ***Cress v. Recreation Servs., Inc***., 341 Ill. App. 3d 149, 795 N.E.2d 817, 859 (2d Dist. 2003).

The Illinois Interest Act, 815 ILCS 205/2, applies when there is "a fixed and easily calculated amount due from a debtor-creditor relationship that has come into existence by virtue of a written instrument." ***Cress***, 795 N.E.2d at 859. There is no debtor-creditor relationship between plaintiffs and defendants. The Interest Act does not apply in this case.

Although there is a narrow exception allowing interest to be recovered in certain equitable actions, that exception does not apply in tort cases. ***Westchester Fire Ins. Co. v. Gen. Star Indem. Co.***, 183 F.3d 578, 585-86 (7th Cir. 1999); ***Freedom Mortg. Corp. v. Burnham Mortg., Inc.***, 720 F. Supp. 2d 978, 989 (N.D. Ill, 2010). Plaintiffs' request for prejudgment interest rests on an award of compensatory damages for intentional interference with a contract and civil

conspiracy. Both are tort claims. Prejudgment interest is not available on the damages awarded by the jury.

Defendants' alternative motion for a new trial based on the receipt and exclusion of certain evidence is without merit and will be denied.

IT IS THEREFORE ORDERED AS FOLLOWS:

(1) Defendants' motion [492] to set aside the jury verdict findings of liability for intentional interference with a contract ( Count I), civil conspiracy (Count III), and awarding $12,900,000 in compensatory damages and awarding $5,000,000 in punitive damages is denied.

(2) Defendant Auchi's motion to set aside the jury's verdict finding him liable for unjust enrichment (Count IV) and imposing punitive damages in the sum of $5,000,000 [500] is granted.

(3) Plaintiffs' motion for prejudgment interest [513] is denied.

(4) Defendants' alternative motion for a new trial [520] is denied.

(5) The Clerk of the Court is directed to vacate the judgment previously entered and enter an amended judgment in favor of plaintiffs Semir D. Sirazi, Greenstone Capital LLC. and Mardini, Inc. and against defendants General Mediterranean Holding, SA and Orifarm, SA in the amount of $17,900,000 with

costs. The Clerk of the Court is further directed to enter an amended judgment in favor of defendant Nadhmi Auchi and against plaintiffs Semir D. Sirazi, Greenstone Capital LLC. and Mardini, Inc. dismissing the cause of action as against Nadhmi Auchi with prejudice.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 5, 2015